[ECF No. 56]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| **ALLIED RECYCLING, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**COOK MARAN & ASSOCIATES, INC.,** et al.,<br><br>Defendants. | Civil No. 22-1701 (KMW/EAP) |

## MEMORANDUM ORDER

This matter having come before the Court on Plaintiff Allied Recycling, Inc's Motion for Leave to Amend/Correct Complaint, *see* ECF No. 56; and Defendants having opposed the Motion, *see* ECF No. 59; and Plaintiff having filed a reply brief, *see* ECF No. 60; and the Court having considered the parties' submissions; and the Court deciding this matter without a hearing pursuant to Federal Rule of Civil Procedure 78(b); and for the reasons set forth below; and for good cause shown, the Court finds the following:

### FACTUAL AND PROCEDURAL BACKGROUND

1.  Plaintiff has brought this insurance broker's errors and omissions action, seeking damages because Defendants allegedly failed to procure a property insurance policy on Plaintiff's behalf. According to the Complaint, on November 28, 2018, Defendant Joseph Caffrey, an insurance agent/broker of Cook Maran & Associates, Inc. ("Cook Maran"), communicated with Thomas Gabrysiak of Plaintiff Allied Recycling, Inc. ("Plaintiff" or "Allied") regarding Cook Maran's "'great understanding of the recycling center business insurance'" market and Caffrey's desire to act as Plaintiff's insurance agent/broker. ECF No. 1, Notice of Removal, Ex. A

("Complaint") ¶¶ 4-6. Caffrey reached out again to Plaintiff on January 2, 2019, and January 8, 2019, to solicit Plaintiff's business. *Id.* ¶¶ 7-8. Plaintiff subsequently provided Cook Maran with its expiring Selective Inland Marine policy and Granite State Insurance Company property and casualty policies. *Id.* ¶ 9.

2. On January 16, 2019, Caffrey met with Gabrysiak and provided a "2019-2020 Commercial Insurance Proposal" with coverage for auto, property, crime, inland marine general liability, and umbrella to be effective on January 17, 2019. *Id.* ¶ 10. The Proposal identified two locations to be insured for property and liability insurance effective January 17, 2019, for one year: (1) 2658 Route 206, Mt. Holly, New Jersey; and (2) 440 New Road, Southampton, New Jersey. *Id.* ¶ 11. The policy was to be issued by Arch Specialty Insurance Company ("Arch"). *Id.* ¶ 11. The Proposal also included coverage for a "Contractors Equipment Risk" that identified a 2017 Fuchs Material Handler valued at $489,495; a 2015 John Deere 524K 4WD Loader valued at $141,000; and a 2015 Volvo EW 180E valued at $320,000. *Id.* ¶ 12. Plaintiff allegedly advised Caffrey that all three of these pieces of equipment were located at the 440 New Road, Southampton, New Jersey location. *Id.* ¶ 13.

3. Acting through Caffrey, Cook Maran then procured the Arch policy of insurance on Plaintiff's behalf, captioned "New Jersey Commercial Property Insurance Policy," effective on January 17, 2019, for one year. *Id.* ¶ 14. The 440 New Road location, however, was not added to the Arch policy until January 30, 2019, when Arch issued Endorsement No. 18, adding the location to the policy and identifying the above-mentioned equipment. *Id.* ¶ 15. According to the Complaint, however, the structures, trailer, personal property, and business income at the location were never added to the policy. *Id.* Although Caffrey repeatedly advised Plaintiff that he had to "inspect" the New Road property, he did not explain the purpose of the inspection; arrange for the structures,

personal property, or business income at the location to be scheduled on the Arch policy; or advise Plaintiff that these items were not scheduled on the Arch policy. *Id.* ¶ 16.

4. On June 17, 2019, Cook Maran caused a "'Schedule of Insurance'" to be issued that "identified 440 New Road on the Schedule of Locations and stated 'Endorsement forthcoming,'" which according to the Complaint, "suggest[ed] that coverage was in place but the formal written endorsement from Arch would be 'forthcoming.'" *Id.* ¶ 17. Plaintiff alleges that Cook Maran failed to obtain building, personal property, and loss of business income coverage with respect to the New Road location. *Id.* ¶ 18.

5. On July 24, 2019, a fire destroyed the building and trailer at the New Road location. *Id.* ¶ 19. According to Plaintiff, in an August 15, 2019 letter, Arch advised Plaintiff that "no coverage extended to Allied's claim for fire damage to the structures located on the property, personal property damaged in the fire, and lost business income because 'the loss location [was] not . . . listed on the policy with building or business personal property coverages.'" *Id.* ¶ 20.

6. On February 23, 2022, Plaintiff filed a complaint in the New Jersey Superior Court, Law Division, Burlington County, against Defendants Cook Maran and Joseph Caffrey. *See generally id.* Plaintiff alleged claims of negligence, breach of fiduciary duty, and breach of contract. *Id.* at "Wherefore Cl."

7. After months of discovery, on November 21, 2024, Plaintiff filed the current Motion for Leave to File an Amended Complaint under Federal Rule of Civil Procedure 15.[1] *See* ECF No. 56. Plaintiff seeks to add a claim for punitive damages against Defendants based on Defendants' alleged efforts to conceal their error in not obtaining coverage for the New Road property. *See* ECF

---

[1] The deadline to file a motion to amend the pleadings expired on August 30, 2022. *See* ECF No. 10 (Scheduling Order), ¶ 5.

No. 56-1 ("Pl.'s Br.") at 1, 9-11; *see also* ECF No. 60 ("Pl.'s Reply"). Defendants have opposed the Motion on grounds of timeliness and futility. *See* ECF No. 59 ("Defs.' Opp.").

## DISCUSSION

8.  As a threshold matter, the Court must determine the appropriate standard of review. While both parties focus on Federal Rule of Civil Procedure 15, which governs the amendment of pleadings, neither party touches on Federal Rule of Civil Procedure 16, which governs the amendment of a scheduling order.

9.  The Third Circuit Court of Appeals has instructed that "when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies [and] [a] party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (footnote omitted); *see also Lasermaster Int'l Inc. v. Neth. Ins. Co.*, No. 15-7614, 2018 WL 1891474, at *3 (D.N.J. Apr. 20, 2018), *aff'd* 2021 WL 3616197 (D.N.J. Aug. 13, 2021).

10. Here, the Court's May 31, 2022 Scheduling Order provided that "the time within which to file a motion to amend the pleadings or a motion to join new parties will expire on August 30, 2022." ECF No. 10 (Scheduling Order) ¶ 5. Because Plaintiff filed the present Motion after the applicable deadline, the Court must first address Plaintiff's compliance with Rule 16 before turning to a Rule 15 analysis.

A.  Rule 16

11. "The deadline for amending pleadings in the pretrial scheduling order 'assures that at some point . . . the pleadings will be fixed.'" *Watson v. Sunrise Senior Living Servs.*, No. 10-230, 2015 WL 1268190, at *6 (D.N.J. Mar. 18, 2015) (quoting Fed. R. Civ. P. 16(b) Advisory Committee Notes to the 1983 Amendment). To permit an untimely amendment, the moving party bears the

4

burden of establishing "good cause" for its failure to comply with the applicable scheduling order's deadline for amending the pleadings. *Prince v. Aiellos,* No. 09-5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (citing *Graham v. Progressive Direct Ins. Co.,* 271 F.R.D. 112, 118 (W.D. Pa. 2010)).

12. The focus of the good cause analysis is "on the diligence, or lack thereof, of the moving party." *Tordella v. Cnty. of Cape May, Bd. of Chosen Freeholders*, No. 18-15101, 2021 WL 3562895, at *2 (D.N.J. Aug. 12, 2021) (citations omitted); *see also Sabatino v. Union Twp.*, 11-1656, 2013 WL 1622306, at *4 (D.N.J. Apr. 15, 2013) (noting that "good cause" under Rule 16 focuses on the diligence of the moving party). To make the good cause determination, the court should "'consider whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend'" before the deadline elapsed. *Ewing v. Cumberland Cnty.*, No. 09-5432, 2014 WL 3974159, at *4 (D.N.J. July 16, 2014) (quoting *Siebel v. Work At Home Vintage Emps., LLC*, Nos. 12-1199, 12-1210, 2013 WL 6094558, at *3 (D.N.J. Nov. 18, 2013)); *GlobespanVirata, Inc. v. Tex. Instruments, Inc.*, No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (stating that the moving party "must show that the deadlines [could not] be reasonably met despite its diligence" (quotation omitted)). "The Court has broad 'discretion in determining what kind of showing the moving party must make in order to satisfy Rule 16(b)'s good cause requirement.'" *Bonds v. NJ Judiciary Admin. of the Court*, No. 19-18983, 2024 WL 2091119, at *5 (D.N.J. May 9, 2024) (quoting *Phillips v. Greben*, No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006)).

13. "The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed." *Speed Info. Tech., Inc. v. Sapido Tech., Inc.*, No. 12-3040, 2016 WL 1610781, at *5 (D.N.J. Apr. 21, 2016) (citing *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005)). While courts have found

5

good cause to modify a scheduling order where the facts necessary for amendment were determined during the discovery period, reasonable diligence remains the touchstone of the analysis. *See McGrath v. Rainbow Pediatrics, P.C.*, No. 19-4714, 2021 WL 3616749, at *3 (D.N.J. Aug. 16, 2021) (finding good cause to modify a scheduling order where the plaintiff discovered the facts supporting the proposed amendment at a fact-witness deposition and "promptly filed" the motion for leave to amend); *Freedom Mtg. Corp. v. Fitzpatrick*, No. 20-5872, 2021 WL 9667929, at *4 (D.N.J. July 28, 2021) (finding good cause to modify scheduling order where plaintiff filed motion for leave to amend within two months after learning the requisite information in depositions); *Sabatino*, 2013 WL 1622306, at *5 (finding good cause where the plaintiff moved to amend less than fifty days after having received all relevant information supporting claims against new defendants).

14.   Here, neither Plaintiff nor Defendants address the Rule 16 good cause standard; both parties focus solely on Rule 15. Nevertheless, "the fact that neither party specifically names Rule 16 or its required good-cause showing does not preclude the Court from applying that standard to plaintiff's motion to amend." *Sabatino*, 2013 WL 1622306, at *3.

15.   Plaintiff's counsel avers that "[t]he factual circumstances [for Plaintiff's punitive damages claim] were disclosed through defendants' Answers to Interrogatories, Production of Documents from the defendants' files, Production of Documents from RT Specialty, the wholesale broker through which defendants Cook Maran & Associates and Joseph Caffrey procured a policy of insurance from Arch Specialty Insurance Company, and Arch Specialty Insurance Company ('Arch') files." ECF No. 56-2, Certification of Francis X. Garrity ("Garrity Certif.") ¶ 4. Although Plaintiff does not specify precisely when the relevant facts became known, fact discovery in this matter proceeded well past the date for amending pleadings through to November 2023. *See* ECF No. 36 (Amended Scheduling Order), ¶ 1.

16. While this argument could potentially justify Plaintiff's inability to meet the August 2022 amendment deadline, Plaintiff's Motion offers no basis for failing to seek leave to amend the Court's scheduling order until approximately one year after the close of fact discovery. Although Plaintiff represents that the parties were engaged in efforts to resolve the claim "that extended for the greater part of six (6) months," Pl.'s Reply at 2, Plaintiff fails to explain its lack of diligence during the course of an entire year following the close of fact discovery. Indeed, Plaintiff's proposed amendment now appears to be an afterthought when the case failed to settle. Such circumstances do not establish good cause to modify the scheduling order.

B. <u>Rule 15</u>

17. Even assuming good cause existed, Plaintiff's Motion would nonetheless fail under Federal Rule of Civil Procedure 15. Rule 15(a) governs amendments to pleadings before trial. A party may amend its pleading once as a matter of course within either twenty-one days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of twenty-one days after service of a responsive pleading or twenty-one days after a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). If those deadlines have expired, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. 15(a)(2). "The court should freely give leave when justice so requires." *Id*.

18. The Third Circuit has adopted a liberal approach to the amendment of pleadings. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings."). However, the Court may deny a motion for leave to amend in one of four instances: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in

7

its pleading but chose not to resolve them. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quotations omitted). Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the court. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

19. Defendants here oppose the filing of Plaintiff's proposed amended complaint on grounds of undue delay.[2] Notably, "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (internal citation omitted). A delay becomes undue only when it places an "unwarranted burden on the court" or may be prejudicial to the opposing party. *Id.*; *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("[D]elay that is 'undue'—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave."). The issue of undue delay requires the court to focus on the moving party's motives for not amending its complaint earlier. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). A motion for leave to amend may be denied if the moving party can offer "no cogent reason" for its delay in seeking the amendment. *Mullin*, 875 F.3d at 151. "[T]he party seeking leave to amend bears the burden of explaining the reasons for the delay." *LePages's Inc v. 3M (Minn. Mining & Mfg. Co.)*, No. 97-3983, 1998 WL 631960, at *4 (E.D. Pa. Sept. 2, 1998) (citation omitted).

20. Under similar circumstances, courts have repeatedly denied motions for leave to add a claim for punitive damages where the factual basis for the claim was known well prior to the motion and the plaintiff failed to explain the basis for delay. *See, e.g., Souffrant v. Hyrowich*, No.

---

[2] Defendants also contend that the proposed amendment is futile. As the Motion is denied on other grounds, the Court will not address this argument.

09-0004, 2009 WL 1073713, at *1 n.1 (E.D. Pa. May 4, 2009) (denying motion for leave to add punitive damages claim where "plaintiffs did not move to amend their Complaint until more than sixteen months after commencing this action . . . [and] were aware of the facts underlying their new legal theory many months before they moved to amend the Complaint."); *Keller v. Schering-Plough, Corp.*, No. 04-669, 2007 WL 2990714, at *4-5 (D.N.J. Oct. 9, 2007) (denying leave to add a punitive damages claim where plaintiff had the necessary information since at least the close of discovery, yet waited until after summary judgment briefing to seek leave to amend); *McCarthy v. Komori Am. Corp.*, 200 F.R.D. 507, 508 (E.D. Pa. 2001) (denying leave to add a punitive damages claim where the factual basis for a punitive damages claim was revealed at least three to five months prior to the filing of the motion to amend and plaintiffs failed to offer any justification for the delay); *Harter v. GAF*, 150 F.R.D. 502, 509-10 (D.N.J. 1993) (denying leave to amend to allege grounds which may entitle plaintiff to punitive damages where leave was sought four and a half years after the filing of the complaint and three years after the close of discovery).

21. Defendants contend that Plaintiff did not file its motion to amend until November 21, 2024, over a year after the close of fact discovery. *See* Defs.' Opp. 7. During that period, Defendants allege that the parties conducted "voluminous discovery," with the last deposition occurring in October 2023. *Id.* at 6-7. Defendants assert that Plaintiff had well over a year to prepare an amended complaint yet unduly delayed in seeking to add a demand for punitive damages. *Id.* at 7-8. In turn, Defendants claim undue prejudice because they have litigated and defended their case without consideration of a punitive damages demand. *Id.* at 8.

22. In reply, Plaintiff asserts that much of the delay occurred during a period of six months when the parties unsuccessfully sought to resolve the case before a private mediator. Pl.'s Reply at 2. During those settlement efforts, Plaintiff claims that it first learned that Defendants would attempt to limit Plaintiff's damages for lost profits to forty-five days after the fire, which is

9

the "Time of Restoration" referenced in the insurance policy that Plaintiff did not receive before the fire. *Id.* Plaintiff posits that, in order to conceal their own culpability in never procuring coverage, Defendants' brokers falsely stated that the insurer had denied coverage, which in turn compounded Plaintiff's losses. *Id.* at 1-2. Finally, Plaintiff avers that its "proofs related to the circumstance of defendants' errors and efforts to cover up those errors, do not change with the assertion of a claim for punitive damages"; rather, Plaintiff "simply ask[s] that the jury evaluate whether the proofs rise to the level of conduct for which the defendants could be liable for punitive damages." *Id.* at 1.

23. The Court finds that undue delay warrants a denial of leave to amend. Fact discovery began in May 2022 and proceeded over an extended period of time, ultimately concluding in November 2023. *See* ECF No. 36, ¶ 1. Plaintiff concedes that during fact discovery, it learned of the factual circumstances that gave rise to a claim for punitive damages. Garrity Certif. ¶¶ 8-9. Plaintiff does not seek to add any factual allegations to the proposed amended complaint, suggesting that it was aware of the factual basis for its punitive damages claim prior to the conclusion of discovery. *See* ECF No. 56-3 (Proposed Amended Complaint). Indeed, Plaintiff offers no cogent explanation for why it did not seek leave to amend any time after the close of discovery in November 2023, until the November 14, 2024 status conference. *See* ECF No. 55, ¶ 1.

24. Allowing Plaintiff to add a claim for punitive damages at this juncture may further delay this case. Fact discovery has been closed for more than a year. Throughout the lengthy discovery process, Defendants tailored their discovery requests without consideration of a claim for punitive damages, which would necessarily involve an inquiry into Defendants' states of mind and alleged efforts to cover up their errors. *See* N.J.S.A. 2A:15-5.12 (stating that punitive damages may be awarded upon clear and convincing evidence that the defendant's acts or omissions "were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions."). Accordingly, fairness would dictate a

limited re-opening of discovery causing cause further delay in the resolution of this matter. *See Golkow v. Esquire Deposition Servs., LLC*, No. 07-3355, 2010 WL 2853028, at *2 (E.D. Pa. July 15, 2010) ("Delay becomes undue and causes undue prejudice when the non-moving party will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence it would have offered had the moving party's amendments been timely." (citations omitted)).

**THEREFORE**, **IT IS** this **30th** day of **January 2025**;

**ORDERED** that Plaintiff's Motion for Leave to Amend/Correct the Complaint is **DENIED**.

s/Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc: Karen M. Williams, U.S.D.J