**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW
JERSEY CAMDEN VICINAGE

| | |
|---|---|
| ALLIED RECYCLING, INC., | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | Civil Action<br>No. 1:22-cv-01701-KMW-EAP |
| v. | |
| COOK MARAN & ASSOCIATES, INC., now an affiliate of EPIC INSURANCE BROKERS AND CONSULTANTS and JOSEPH CAFFREY, | OPINION |
| Defendants. | |

**Francis X. Garrity, Esq.**
GARRITY, GRAHAM, MURPHY
GAROFALO & FLINN, P.C.
425 Eagle Rock Avenue, Suite 202
Roseland, NJ 07068

*Counsel for Plaintiff Allied Recycling, Inc.*

**Carly Sirota, Esq.**
KAUFMAN DOLOWICH LLP
245 Main Street, Suite 330
White Plains, New York 10601

**Stephen C. Cunningham, Esq.** (*pro hac vice*)
KAUFMAN DOLOWICH, LLP
245 Main Street, Suite 330
White Plains, NY 10601

*Counsel for Defendants Cook Maran & Associates, Inc., now an affiliate of Epic Insurance Brokers and Consultants, and Joseph Caffrey*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

This case involves a dispute over a commercial insurance policy. Plaintiff Allied Recycling, Inc. ("Allied Recycling" or "Plaintiff") filed a Complaint against its insurance broker Cook Maran & Associates, Inc., now an affiliate of Epic Insurance Brokers and Consultants ("Cook Maran"), and Joseph Caffrey (collectively, "Defendants").

1

Presently before the Court is Defendants' Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56, seeking to limit Plaintiff's "lost business income" damages to the "period of restoration," as set forth in policy. (ECF No. 78.) The Motion is opposed by Plaintiff, who has also cross-moved for partial summary judgment pursuant to Rule 56, seeking to bar the Defendants from asserting an affirmative defense based on the "Business Income (Extra Expense) Coverage" provision of the policy. (ECF No. 83.) Defendants replied (ECF No. 86.) The Court has considered the parties' written submissions, finds oral argument unnecessary, and decides the motions on the papers. For the reasons set forth below, both Motions are **DENIED.**

## II.   BACKGROUND

On July 24, 2019, a fire occurred at Allied Recycling's Southampton location, resulting in destruction of a pole building, a break trailer, and tools and equipment. (ECF No. 83-4 ¶¶ 8–9.[1]) Plaintiff alleges that because of the fire, business operations ceased and have not resumed, resulting in loss of business income. (*Id.* ¶ 10.) At the time of the fire, Plaintiff was covered under a Commercial Property Insurance Policy (the "Policy"), issued by Arch Specialty Insurance Company ("Arch"), which provided coverage for Real Property, Business Personal Property, Business Income with Extra Expense and Equipment and Machinery with limits of $5,000,000. (*Id.* ¶ 1[2]; ECF No. 78-11 ¶ 5.[3]) Cook Maran and its agent, Joseph Caffrey, represented Allied Recycling in procuring the Policy. (ECF No. 83-4 ¶ 7.) On August 15, 2019, Arch denied coverage for the property damage sustained in the fire, because the pole building and trailer were not listed as insured structures in the Policy. (*Id.* ¶ 13; ECF No. 78-11 ¶ 10.)

---

[1] Plaintiff's Statement of Material Facts ("PSMF") (ECF No. 83-4.)
[2] The Court specifically refers to the Arch New Jersey Commercial Property Policy, bearing policy number PHH10000033-00, effective from January 17, 2019 to January 17, 2020 (ECF No. 83-4 ¶ 1.)
[3] Defendants' Statement of Material Facts ("DSMF") (ECF No. 78-11.)

Although Cook Maran challenged Arch's denial of coverage, Arch did not reverse its denial of coverage. (ECF No. 83-4 ¶¶ 14–18.)

On February 23, 2022, Allied Recycling commenced this suit against Cook Maran in the Superior Court of New Jersey, Burlington County, for alleged failure to procure proper insurance coverage. (ECF No. 1 ¶ 1.) Thereafter, Cook Maran timely removed pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446, based on diversity of citizenship. (ECF No. 1.) On May 22, 2025, Plaintiff filed a motion to preclude Defendants from asserting an affirmative defense based on the 120-day limitation of business income loss immediately following the beginning of the "period of restoration" in the Policy. (ECF No. 75.) On May 23, 2025, Defendant filed the present Motion for Partial Summary Judgment. (ECF No. 78.[4]) On May 27, 2025, this Court denied Plaintiff's Motion to Preclude in light of Plaintiff's pending Motion for Summary Judgment on the same issue. (ECF No. 80.) On June 2, 2025, Plaintiff filed a Cross-Motion for Partial Summary Judgment (ECF No. 83.[5]), to which Defendants replied. (ECF No. 86.[6])

### III.   LEGAL STANDARD

A court may grant summary judgment when the materials of record "show[ ] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d

---

[4] Defendants' Motion for Partial Summary Judgment ("DMSJ") (ECF No. 78.)
[5] Plaintiff's Cross Motion for Partial Summary Judgment ("PMSJ") (ECF No. 83.)
[6] Defendants' Reply ("Reply") (ECF No. 86.)

120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If satisfied, the burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a *genuine issue for trial.*" *Id.* (internal quotation marks omitted) (emphasis in original). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256–57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements[.]'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

IV.   **DISCUSSION**

In its Motion for Partial Summary Judgment, Defendants seek a ruling limiting the amount of "lost business income" damages Plaintiff may recover. They argue that, even assuming a triable issue on broker liability for the alleged failure to procure proper coverage for the 2019 fire loss, Plaintiff's recoverable lost-income damages are measured by—and therefore cannot exceed—what the Policy itself would have provided, which is limited to the Policy's

4

"period of restoration." As will be discussed below, the Policy does not specify a fixed number of days; instead, it defines that period by reference to when the damaged property should have been repaired/rebuilt/replaced with reasonable speed and similar quality (or when operations resume at a new permanent location). Relying on their expert's estimate that restoration would have taken approximately six to eight weeks, Defendants seek a ruling that Plaintiff may not pursue lost business income damages beyond eight weeks following the fire. Alternatively, Defendants argue that Plaintiff's recovery should be limited based on certain purported failures to mitigate their damages.

In its Cross-Motion for Summary Judgment, Plaintiff seeks a ruling barring Defendants from "asserting as an affirmative defense any provision of the [Policy] . . . limiting the amount of Plaintiff's business income loss." (ECF No. 83-1 at 1.) It reasons that Defendants never pled a Policy-imposed limitation as an affirmative defense in its Answer to the Complaint, and that it has thus waived any such defense.[7] (*Id.* at 10).

### A. <u>Waiver of "Affirmative Defense"</u>

The Court first addresses Plaintiff's Cross-Motion. "Under Federal Rule of Civil Procedure 8(c), '[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense'" or it is waived. *Moody v. Atlantic City Board of Education*, 870 F.3d 206, 218 (3d Cir. 2017) (quoting Fed. R. Civ. P. 8(c)(1)) (omission in original). The "purpose" of this requirement is "to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *Robinson v.*

---

[7] Plaintiff also argues that Defendants are liable for consequential damages. (ECF No. 83-1 at 21, 32.) The Court notes that this issue is not one that must be resolved at the summary judgment stage. Nevertheless, because both parties have addressed the issue in their briefing, the Court will address it briefly. To this end, it is beyond cavil that when a broker fails to procure the proper policy, the proper measure of damages is still the amount the Policy would have covered, if properly obtained. *See Robinson v. Janay*, 253 A.2d 816, 819 (N.J. Super. Ct. App. Div. 1969).

*Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002).

The Court is not persuaded that a contractual limitation of Plaintiff's recovery is an "affirmative defense" that needs to be specifically pled. *See Elliot & Frantz v. Ingersoll-Rand Co.*, 457 F.3d 312, 321 (3d Cir. 2006) (discussing distinction between "general defense" and "affirmative defense"); *see also* Fed. R. Civ. P. 8(c) (enumerating list of affirmative defenses); N.J. Ct. R. 4:5–4 (same). Even assuming that it was, Plaintiff has not shown any prejudice sufficient to warrant waiver or preclusion. "[T]he Third Circuit has held that whether an affirmative defense is waived will depend on whether the defense was raised 'at a pragmatically sufficient time' and whether the plaintiff was prejudiced in his ability to respond" to the assertion. *Safarian v. Am. DG Energy Inc.*, No. 10-6082, 2015 WL 12698441, at *6 (D.N.J. Nov. 24, 2015) (quoting *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991)).

Here, Plaintiff states that Defendants did not raise the limitation of business income loss provision in its Answer or its Answers to Interrogatories, and instead asserted the provision "more than five years after the Southampton fire." (ECF No. 83-1 at 8.) But Plaintiff offers only generalized and speculative assertions of unfair surprise, identifying no concrete harm. In any event, Plaintiff cannot plausibly claim surprise where the Policy has been in its possession and the limitation language appears on its face.

Accordingly, Plaintiff's Cross-Motion is denied.

### B. Scope of Damages

The Court next addresses the arguments set forth in Defendants' Motion. "[A]n insurance broker owes a duty to the insured to act with reasonable skill and diligence in performing the services of a broker." *Carter Lincoln-Mercury, Inc. v. Emar Grp., Inc.*, 638 A.2d 1288, 1291 (N.J. 1994) (citing *Rider v. Lynch*, 201 A.2d 561, 567 (N.J. 1964)); *see also Milliken v.*

6

*Woodward*, 45 A. 796, 798 (N.J. 1900). The Supreme Court of New Jersey has held that if an insurance broker "neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby." *See Rider* 201 A.2d at 567. However, the "duty of a broker . . . is not unlimited." *Carter Lincoln-Mercury, Inc.*, 638 A.2d at 1292. "The damages which may be recovered for breach of an agreement to furnish an insurance policy is the loss sustained by reason of the breach, the amount that would have been due under the policy provided it had been obtained." *Robinson v. Janay*, 253 A.2d 816, 819 (N.J. Super. Ct. App. Div. 1969) (internal quotation marks omitted); s*ee also Arc Family, LLC v. Ralph Parnes Associates, Inc.*, No. A-5411-05T2, 2008 WL 1820799, at *16 (N.J. Sup. Ct. App. Div. Apr. 24, 2008) (determining damages as "the gap in coverage, or the amount that would have been due under the policy had it been properly obtained, minus any insurance proceeds received").

Therefore, the Court finds that Plaintiff's damages based on Defendants' alleged failure to procure proper insurance are limited by the Policy and what it was meant to cover. *See Robinson*, 253 A.2d at 819; *see also Rider*, 201 A.2d at 567.

Defendants seek to limit Plaintiff's business income damages based on the Policy's "period of restoration" and "loss determination" provisions. Those provisions are set forth in the Policy's "Business Income (and Extra Expense) Coverage Form" and read, in relevant part, as follows:

> A.  **Coverage**
>                                          . . . .
>     1.  **Business Income**
>                                          . . . .
>     We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".

7

    **C. Loss Conditions**

        . . . .

        **3. Loss Determination**

            . . . .

            **d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based upon the length of time it would have taken to resume "operations" as quickly as possible.

(ECF No. 78–4 at 50, 55–57.)

The Policy defines "Period of Restoration" to mean the period of time that

  **a.** Begins:

    **(1)** 72 hours after the time of direct physical loss or damage for Business Income coverage; or

    **(2)** Immediately after the time of direct physical loss or damage for Extra Expense coverage;

  caused by or resulting from any Covered Cause of Loss at the described premises; and

  **b.** Ends on the earlier of:

    **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    **(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

    **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

    **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(*Id.* at 62–63.)

Defendants argue that the "period of restoration" would begin "72 hours after the time of the fire on July 24, 2019," and end "when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality since Allied Recycling never resumed business at a new permanent secondary location." (ECF No. 78-12 at 11.) In support of this

8

interpretation, Defendants rely on the analysis of their expert, Patrick Hasan, who concludes, *inter alia,* that the term "should be repaired" is limited to "six to eight weeks." Thus, Defendants argue that Plaintiff's business income loss should be limited to that extent. (*Id.*)

As with any contract, the interpretation of an insurance policy is generally a question of law for courts to decide. *See Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016). The Third Circuit has succinctly synthesized the principles of interpreting insurance policies like the one here:

> Under New Jersey law, an insurance policy is simply a contract and its provisions should of course, be construed as in any other contract. As is the case with other types of contracts, an insurance policy is to be governed by its own terms without recourse to other documents unless its own language so requires. In the absence of any ambiguity, the terms of an insurance policy should be given their plain, ordinary meaning.
>
> Ambiguity exists where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage. New Jersey caselaw does not require that we credit every conceivable deconstruction of contractual language, but rather instructs that the doctrine of ambiguity should be invoked only to resolve genuine ambiguities, not artificial ambiguities created by semantical ingenuity. Determining whether genuine ambiguity is present in an insurance policy requires interpreting the policy as a whole, by giving a reasonable meaning to its form and cast.

*Royal Ins. Co. of Am. v. KSI Trading Corp.*, 563 F.3d 68, 73–74 (3d Cir. 2009) (citations and quotation marks omitted); *see also Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264–65 (N.J. 2001). "If the insurance policy's terms are ambiguous, the courts will ordinarily construe . . . ambiguities in favor of the insured." *Mac Prop. Group LLC & The Cake Boutique LLC v. Sel. Fire and Cas. Ins. Co.*, 278 A.3d 272, 281 (N.J. Super. Ct. App. Div. 2022) (internal quotation marks omitted).

Courts in this District have confronted similar "period of restoration" provisions, even when the insured never resumed operations. *See, e.g., NN&R, Inc. v. One Beacon Ins. Group*, No. 03-5011, 2006 WL 1765077, at *7 (D.N.J. June 26, 2006). However, questions of when an

insured "should" have repaired a damaged structure with "reasonable speed" are inherently fact-intensive inquiries, requiring case-specific evidence. *See NN&R*, 2006 WL 1765077, at *7 (questions of fact exist as to the cause of suspension of business operations based on the definition of "period of restoration" in the policy which preclude summary judgment in favor of either party leaving it to "be resolved by a jury").

Here, there are factual determinations to be made regarding when Plaintiff's property "should" have been repaired "with reasonable speed," the time required to resume operations "as quickly as possible," and whether Defendants' six-to-eight-week estimate proposed by their expert is adequately persuasive. Such determinations are within the province of the jury. Accordingly, Defendants' Motion is denied to the extent it seeks fixing the "period of restoration" and limiting Plaintiff's business income losses to Defendants' proposed six-to-eight-week period.

### C. **Mitigation of Damages**

Finally, Defendants argue that Plaintiff failed to mitigate its damages. (ECF No. 78-12 at pp. 14-15.) Defendants claim that Plaintiff could have taken a number of actions to mitigate its damages including:

- Pay for the restoration of the Southampton location from its own capital and keep an itemized list of expenses in doing so;
- Acquire a loan to assist in paying for the restoration of the Southampton location; and/or
- Negotiate with Cook Maran in good faith and provide a reasonable estimate at the outset of the litigation as to the restoration of the Southampton location.

(*Id.* at p. 15.) According to Defendants, "[a]ny one of those actions would have reduced Plaintiff's

damages." (*Id.*) Although Plaintiff does not dispute the common law requirement to mitigate damages, it asserts that Defendants bear the burden of proof with respect to Plaintiff's mitigation efforts, and finding mitigation "is a fact question for the jury." (ECF No. 83–1 at 38–39.) Here, the Court agrees with Plaintiff.

"It is well settled that injured parties have a duty to take reasonable steps to mitigate damages." *McDonald v. Mianecki*, 398 A.2d 1283, 1295 (N.J. 1979) (internal citation omitted). The defendant bears the burden of proof that plaintiff has failed to mitigate its damages. *Wade v. Kessler Institute*, 748 A.2d 580, 591 (N.J. Super. Ct. App. Div. 2001), *aff'd*, 798 A.2d 1251 (N.J. 2002); *Goodman v. London Metals Exch., Inc.*, 429 A.2d 341, 352 (N.J. 1981). In determining mitigation of damages, courts consider, among other things, "what reasonable actions the plaintiff ought to have taken." *Koppers Co., v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1448 (3d Cir. 1996). "Mitigation depends upon the facts of the case." *Goodman*, 429 A.2d 341, 350 (N.J. 1981).

Here, because mitigation turns on whether Plaintiff took reasonable actions to mitigate its damages, a question of fact exists with respect to same. For instance, whether Plaintiff should have paid for the restoration of the Southhampton location from its own capital or acquired a loan to assist with paying for the restoration necessarily invoke determinations as to the reasonableness of Plaintiff's actions. Such determinations are within the province of the jury. Consequently, the Defendants' motion for summary judgment on these grounds is denied.

## V. CONCLUSION

For all of the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 78.) is **DENIED** and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 83.) is **DENIED**.

Dated: February 4, 2026

                                                  KAREN M. WILLIAMS, U.S.D.J.